**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Orlando Medina, et al., ) | No. CV 05-4214-PHX-SMM |
| ) | |
| Plaintiffs, ) | |
| ) | **MEMORANDUM OF DECISION AND** |
| vs. ) | **ORDER** |
| ) | |
| Chas Roberts Air Conditioning, Inc., et al.,) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is Defendant Chas Roberts Air Conditioning Inc.'s ("Roberts") Motion to Dismiss Plaintiffs' second cause of action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkt. 4.) Plaintiffs Orlando Medina, Mahelio Rico, Joseph Muniz, and Jose Rodriguez (collectively, "Plaintiffs") have filed a response to Roberts' Motion to Dismiss. (Dkt. 6.) In turn, Roberts has filed a reply in support of its motion. (Dkt. 8.)

**FACTUAL BACKGROUND**[1]

Roberts is an employer engaged in commerce within the meaning of the Fair Labor Standards Act (the "FLSA"). (Dkt. 1, ¶4.) Defendant Does 1-10 are management personnel of Roberts who were partly responsible for Roberts' decision to discharge Plaintiffs. (Id.,

---

[1] When considering a Motion to Dismiss, this Court must "accept as true all material allegations in the complaint and construe them in the light most favorable to the plaintiff." Westlands Water Dist. v. Firebaugh Canal, 10 F.3d 667, 670 (9th Cir. 1993). Accordingly, the following facts are taken entirely from the allegations of Plaintiffs' Complaint. (Dkt. 1.)

1   ¶5.) Plaintiffs Medina and Rico previously filed an action alleging that Roberts has been
2   underpaying its current and former employees in violation of the FLSA and an Arizona state
3   statute (the "Class Action"). (Id., ¶6; see Rico, et al. v. Chas Roberts, et al., U.S.D.C. Ariz.
4   Case No. 05-1371-PHX-EHC.)

5   On December 1, 2005, Defendants first learned that Medina and Rico were actively
6   participating in the Class Action and had allegedly discovered violations of the FLSA and
7   state payment laws. (Id., ¶7.) On December 2, 2005, foreman Rick Lange responded by
8   announcing that Plaintiffs would not be permitted to work under him. (Id.) Manager Charles
9   Brooks echoed Lange's sentiments. (Id.)

10  Plaintiffs made up a work crew based out of Roberts' Queen Creek yard. (Id., ¶8.)
11  On December 5, 2005, after Plaintiffs reported for work in Queen Creek, Defendants
12  reassigned them to Roberts' Litchfield yard. Plaintiffs drove to the Litchfield yard, stopping
13  only once to get gas. Due to several freeway accidents, the trip took two hours. (Id., ¶9.)

14  When they arrived at the Litchfield yard, management advised Plaintiffs that they
15  would be permitted to work only if they reported working no more than eight hours and
16  agreed to be paid one hour for drive time each way. (Id., ¶10.) Plaintiffs objected to these
17  demands and reminded management they were to be paid for all time worked, including drive
18  time between work locations. Defendants refused to allow Plaintiffs to work and sent them
19  back to the Queen Creek yard, where they were sent home early. (Id., ¶11.)

20  On December 6, 2005, Defendants suspended Plaintiffs on the grounds that it took
21  three hours for them to get from the Queen Creek yard to the Litchfield yard on December
22  5, 2005. (Id., ¶12.) Plaintiffs were not provided an opportunity to explain that the trip had
23  not in fact taken three hours or that the delay resulted from freeway accidents. (Id., ¶13.)
24  The State Police have confirmed that, on December 5, 2005, four accidents were reported on
25  the freeway Plaintiffs used to get to the Litchfield yard. (Id., ¶14.)

26  On December 9, 2005, Defendants discharged Plaintiffs without offering any
27  explanation except that their services were no longer needed. (Id., ¶15.) There was no

28

1 shortage of work, as other persons were subsequently hired to do the work Plaintiffs could
2 have done.  (Id., ¶16.)

3      Roberts claims that Plaintiffs were fired because they stole materials.  (Id., ¶17.)
4 Plaintiffs deny stealing materials.  (Id., ¶18.)  Based on the timing of their discharge, the
5 shifting explanations for their discharge, Defendants' failure to investigate the allegations
6 against them, and the falsity of such allegations, Plaintiffs claim they were discharged in
7 retaliation for engaging in activities protected by the FLSA and state law.  (Id., ¶19.)

8      Relying on 29 U.S.C. § 215(a)(3), Plaintiffs' first count alleges that Defendants
9 breached the FLSA by discharging them in retaliation for complaining to both the court and
10 Defendants that they were violating the FLSA.  (Dkt. 1, ¶¶21-25, Count I).  In Count two,
11 Plaintiffs Medina and Rico allege that Defendants breached Arizona's Employment
12 Protection Act (the "EPA"), Ariz.Rev.Stat. § 23-1501(3)(c)(ii), by discharging them in
13 retaliation for filing the Class Action and responding to discovery requests that Defendants
14 were violating Arizona payment laws.

## STANDARD OF REVIEW

16      Fed.R.Civ.P. 12(b)(6) authorizes a court to dismiss a claim on the basis of a
17 dispositive issue of law.  Neitzke v. Williams, 490 U.S. 319, 326 (1989).  A complaint may
18 not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff
19 can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to
20 relief."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.1987) (quoting Conley v.
21 Gibson, 355 U.S. 41, 45-46 (1957)).  If as a matter of law it is clear that no relief could be
22 granted under any set of facts that could be proved consistent with the allegations, under Rule
23 12(b)(6) a claim must be dismissed, without regard to whether it is based on an outlandish
24 legal theory or on a close but ultimately unavailing one.  See Neitzke, 490 U.S. at 327.  On
25 a motion to dismiss for failure to state a claim, the court must presume all factual allegations
26 of the complaint to be true and draw all reasonable inferences in favor of the nonmoving
27 party.  Usher, 828 F.2d at 561.  A court is not required to accept legal conclusions cast in the
28

1  form of factual allegations if those conclusions cannot reasonably be drawn from the facts
2  alleged.  McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988).

## DISCUSSION

**I.    Plaintiffs Rico and Medina Have Alleged A Valid Claim Under Arizona's EPA**

Relying on Galati v. America West Airlines, Inc., 69 P.3d 1011, 1014 (Ariz. Ct. App. 2003), Roberts argues that Medina's and Rico's second cause of action is not cognizable under Arizona's EPA because A.R.S. § 23-1501(3)(c)(ii) "does not give rise to a retaliation claim premised upon an employee's reporting of a violation of a federal statute," such as the FLSA.  (Dkt. 8 at 1.)  Plaintiffs Medina and Rico do not dispute the holding of Galati, but contend count two is distinguishable because it is premised upon their reporting a violation of A.R.S. §23-353,[2] i.e., that Roberts failed to pay current and former employees for all hours worked.  (Dkt. 6 at 3.)   The Court agrees with Plaintiffs Medina and Rico.

Pursuant to A.R.S. § 23-1501(3)(c)(ii), an employee has a wrongful termination claim against the employer if the employer terminates the employment relationship of an employee in retaliation for:

> The disclosure by the employee . . . that [he] has information or a reasonable belief that the employer . . . has violated . . . the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the . . . statutes of this state . . . .

A.R.S.§ 23-1501(3)(c)(ii).  In their Class Action complaint, Plaintiffs Medina and Rico alleged that "former Roberts' field employees" were paid for fewer hours than they actually

---

[2]   A.R.S. 23-353 provides that an employee "shall be paid wages due him within three working days or the end of the next regular pay period, whichever is sooner," when he is discharged from the service of an employer, and shall be paid in the usual manner all wages due him no later than the regular payday for the pay period during which the termination occurred, when he quits the service of an employer.  A.R.S. 23-353(A)-(B).

- 4 -

1  worked, and thus were not paid in full when they left their jobs, a violation of A.R.S. §23-
2  353.  See Rico, et al. v. Chas Roberts Air Conditioning, Inc., CV 05-1371-PHX-EHC, Dkt.
3  1, Ex. A at ¶¶1,7,20,22,26; at page 6, ¶E.  Roberts' reliance on Taylor v. Graham County
4  Chamber of Commerce, 33 P.3d 518, 522 (Ariz. Ct. App. 2001) (dkt. 8 at 2), is inapposite.
5  Taylor only addresses claims under A.R.S. § 23-1501(3)(b); it does not refer to claims
6  brought under A.R.S. § 23-1501(3)(c)(ii).  Accordingly, Plaintiffs Medina and Rico have
7  stated a cognizable state law retaliation claim stemming from the filing of their Class Action
8  complaint that Roberts violated an Arizona wage statute, A.R.S. §23-353.

9  **II.     The FLSA Does Not Preempt Plaintiffs' State Law Retaliatory Discharge Claim**

10           Roberts argues that, even if cognizable, Medina's and Rico's state law claim for
11  retaliatory discharge is preempted because the FLSA provides an adequate statutory remedy,
12  and thus imposition of Arizona's state law remedy would frustrate the purpose of the FLSA.
13  (Dkt. 4 at 6-10.)  Rico and Medina argue that the FLSA contains no express preemption
14  language, that the Ninth Circuit has held "the FLSA's savings clause is proof that Congress
15  did not intend to occupy the field," and that remedies for state law retaliatory discharge
16  claims do not conflict with the FLSA because compliance with both state laws and the FLSA
17  is not impossible.  (Dkt. 6 at 1-2,6.)

18           Article VI of the Constitution provides that the laws of the United States "shall be the
19  supreme Law of the Land; . . . any Thing in the Constitution or laws of any state to the
20  Contrary notwithstanding."  Art. VI, cl. 2.  However, consideration of issues arising under
21  the Supremacy Clause "'start[s] with the assumption that the historic police powers of the
22  states [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest
23  purpose of Congress.'"  Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (citation
24  omitted).  Moreover, States possess broad authority under their police powers to regulate the
25  employment relationship to protect resident workers.  DeCanas v. Bica, 424 U.S. 351, 356
26  (1976).   Thus, in addressing the preemption question, this Court "'start[s] with the
27  assumption that the historic powers of the States were not to be superseded by [federal

- 5 -

1  legislation] unless that was the clear and manifest purpose of Congress.'" Chevron U.S.A., Inc. v. Hammond, 726 F.2d 483, 488 (9th Cir. 1984) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). Moreover, "because the States are independent sovereigns in our federal system," it is "presumed that Congress does not cavalierly pre-empt state-law causes of action." See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996).

In the Ninth Circuit, preemption analysis is based "on the Supreme Court's three categories: (1) *express preemption* – 'where Congress explicitly defines the extent to which its enactments preempt state law'; (2) *field preemption* – 'where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy'; and (3) *conflict preemption* – 'where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Williamson v. General Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir. 2000) (internal citations omitted) (emphasis in original).

In the present case, both parties agree that no statutory language expressly preempts Rico's and Medina's state law retaliatory discharge claim. In addition, Roberts concedes that the FLSA does not preempt the entire field. (Dkt. 4 at 9.) The Court agrees. See Williamson, 208 F.3d at 1151 ("the FLSA's 'savings clause' is evidence that Congress did not intend to preempt the entire field"). Given that Roberts does not argue express or field preemption, the only way Plaintiffs' second claim can be found preempted is by conflict preemption. Id.

Roberts does not argue conflict preemption, but instead claims that the FLSA provides plaintiffs an adequate statutory remedy, and thus Rico's and Medina's state retaliatory discharge claim is barred. (Dkt. 4 at 6-7.) Plaintiffs Medina and Rico respond that the FLSA does not preempt a state law claim for retaliatory discharge based on public policy when the basis for such claim is the employee's report of a state law violation. (Dkt. 6 at 4-8.) Although the Ninth Circuit Court of Appeals has not yet addressed this issue, the Court finds that the FLSA does not preempt Rico's and Medina's state law retaliatory discharge claim.

- 6 -

1    First, in support of its argument that the FLSA provides the Plaintiffs with an adequate
2  statutory remedy and thus their state law retaliatory discharge claim is preempted, Roberts
3  relies on <u>Prewitt v. Factory Motor Parts, Inc.</u>, 747 F.Supp. 560 (W.D. Mo. 1990), <u>Tate v.
4  Pepsi-Cola Metropolitan Bottling Co.</u>, 1983 WL 549 (E.D. Wis. 1983), and <u>Gusdonovich v.
5  Business Information Co.</u>, 705 F.Supp. 262 (W.D. Pa. 1985).  (Dkt. 4 at 6-8.)  In all three
6  cases, however, the plaintiffs alleged that their state law claims for wrongful discharge were
7  based on violations of public policy "underlying the FLSA."  <u>See</u> <u>Prewitt</u>, 747 F.Supp. at
8  565; <u>Tate</u>, 1983 WL 549, at *4; <u>Gusdonovich</u>, 705 F.Supp. at 263.  As a result, these three
9  courts agreed that the statutory remedy contemplated by the FLSA completely replaced the
10 common law remedy because the FLSA contained its own exhaustive enforcement remedies
11 for a violation of the FLSA.  <u>See</u> <u>Prewitt</u>, 747 F.Supp. at 565; <u>Tate</u>, 1983 WL 549, at *4;
12 <u>Gusdonovich</u>, 705 F.Supp. at 266.

13   <u>Prewitt</u>, <u>Tate</u>, and <u>Gusdonovich</u> are distinguishable from the instant case, because the
14 plaintiffs at issue there based wrongful discharge claims on the policy underlying the FLSA.
15 Here, by contrast, Rico and Medina base their state retaliatory discharge claim on the public
16 policy underlying Arizona's wage law that requires employers to properly count the number
17 of hours employees work and pay them the resulting sum by the time of their last regular
18 paycheck.  <u>See</u> A.R.S. §23-353.  Thus, unlike the cases cited by Roberts, no aspect of Rico's
19 and Medina's claim for retaliatory discharge in violation of public policy relies on the FLSA.
20 Moreover, Roberts' argument that Medina's and Rico's retaliatory discharge claim is limited
21 to the exclusive remedy provided by the FLSA asserts "field preemption," and conflicts with
22 <u>Williamson</u>'s holding (and its concession) that Congress did not intend to preempt the entire
23 field (<u>see</u> dkt. 4 at 9).  <u>See</u> <u>Williamson</u>, 208 F.3d at 1151 (under "field preemption," the
24 common law claim is preempted because the statute provides exclusive remedies).

25   Second, in support of its argument that the imposition of a state law remedy would
26 frustrate the purpose of the FLSA, Roberts relies on <u>Spieth v. Adasen Distributing, Inc.</u>, 1989
27 WL 61187 (D. Ariz. 1989).  (Dkt. 4 at 8-10.)  In <u>Spieth</u>, the Court held that "the FLSA
28

- 7 -

1 preempts any recovery for a claim of wrongful discharge as the FLSA remedies are all-
2 encompassing." (Id. at *2.) In light of the Ninth Circuit's decision in Williamson, however,
3 Spieth is no longer good law on this particular point. In Williamson, the Ninth Circuit held
4 that the FLSA did not preempt fraud claims related to dissuading participation in an FLSA
5 complaint. In permitting the plaintiff's fraud claims to go forward, the Williamson Court
6 rejected the district court's conclusion that the "FLSA is the exclusive remedy for claims that
7 duplicate or are the equivalent of rights protected by the FLSA." Williamson, 208 F.3d at
8 1154; see also Barnett v. Washington Mutual Bank, 2004 WL 2011462, *6 (N.D. Cal. 2004)
9 ("the assumption that the FLSA is the exclusive remedy for claims duplicated by or
10 equivalent of rights covered by the FLSA is incorrect").

11 Spieth is also distinguishable because, in support of its conclusion that "the FLSA
12 preempts any recovery for a claim of wrongful discharge" (id.), Spieth relied on two district
13 court cases, Wanderlingh v. May Dept. Stores Co., 1984 WL 3293 (D. Colo. 1984), and Tate,
14 1983 WL 549, neither of which comports with Ninth Circuit jurisprudence. In both
15 Wanderlingh and Tate, the courts held that the FLSA provided the exclusive remedy for the
16 plaintiffs' state law claims of wrongful discharge because the violation underlying each claim
17 was also covered by the FLSA. Here, as stated above, Rico and Medina base their state
18 retaliatory discharge claim on the public policy underlying Arizona's law, which requires
19 employers to properly count the number of hours employees work and pay them the resulting
20 sum by the time of their last regular paycheck. See A.R.S. §23-353.

21 Roberts also contends that the Ninth Circuit's decision in Williamson implicitly
22 recognizes that the FLSA savings clause does not permit a wrongful discharge claim based
23 on state law. (Dkt. 4 at 11.)   According to Roberts, the Ninth Circuit's decision in
24 Williamson "effectively embraced" Spieth's interpretation of the FLSA savings clause
25 because "the plaintiffs' state law [fraud] claims were not preempted based on the fact that the
26 employer's alleged conduct 'would not be actionable under the [FLSA's] anti-retaliation
27 provision." (Id.) Roberts' interpretation of Williamson, however, is incorrect. As

28
- 8 -

1  previously discussed, the Ninth Circuit clearly rejected the district court's assumption that
2  the "FLSA is the exclusive remedy for claims that duplicate or are the equivalent of rights
3  protected by the FLSA." Williamson, 208 F.3d at 1154; see also Barnett, 2004 WL at *6
4  ("the assumption that the FLSA is the exclusive remedy for claims duplicated by or
5  equivalent of rights covered by the FLSA is incorrect").  Moreover, the Ninth Circuit
6  specifically found in Williamson that "the principal purpose of the FLSA is to protect all
7  covered workers from substandard wages and oppressive working hours." 208 F.3d at 1150
8  (quotation and citations omitted).  If the goal of the FLSA is generally to protect workers and
9  their right to minimum wages and overtime, no threat to the accomplishment of that goal is
10 posed by Medina's and Rico's state law claim for retaliatory discharge based on Arizona's
11 requirement that an employer properly count the number of hours employees work and pay
12 them the resulting sum by the time of their last regular paycheck.

13       For the reasons set forth above, Roberts has failed to demonstrate that it would be
14 impossible for a private party to comply with both state and federal requirements, nor has it
15 shown that Arizona law stands as an obstacle to the accomplishment of the congressional
16 objectives of the FLSA.  Thus, Roberts has not satisfied its burden of proving that Rico's and
17 Medina's state law claim for retaliatory discharge in violation of public policy is preempted
18 by the FLSA.

19 **III.    Doe Defendants Are Permitted in Federal Court**

20       Roberts argues that the naming of fictitious "Does 1 through 20" in Plaintiff's
21 Complaint "is contrary to longstanding practice in this district and elsewhere in the Ninth
22 Circuit." (Dkt. 4 at 12-13.)  Controlling authority suggests otherwise.

23       The Ninth Circuit has rejected naming "Doe" defendants in diversity actions, on the
24 grounds that complete diversity cannot exist if the identity and citizenship of some
25 defendants (i.e., the "Does") are unknown. See Fifty Associates v. Prudential Life Ins. Co.
26 of America, 446 F.2d 1187, 1191 (9th Cir. 1970). The use of "Does" in federal question
27 cases, however, is permissible if the complaint alleges why the defendant's real name was
28

- 9 -

1  not then known or ascertainable.  See Bivens v. Six Unknown Named Agents of Federal
2  Bureau of Narcotics, 403 U.S. 388, 390 (1971); Merritt v. Los Angeles, 875 F.2d 765, 768
3  (9th Cir. 1989).  Where "Doe" allegations are permissible, the form and content should be
4  patterned after state law.  See Anderson v. Allstate Ins. Co., 630 F.2d 677, 680-83 (9th Cir.
5  1980).  Pursuant to Rule 10(f) of 16 A.R.S. Rules of Civil Procedure, "[w]hen the name of
6  the defendant is unknown to the plaintiff, the defendant may be designated in the pleadings
7  or proceeding by any name.  When the defendant's true name is discovered, the pleading or
8  proceeding may be amended accordingly."

9      The present case is a federal question proceeding.  Here, Plaintiffs contend "[n]one
10  of the managers who communicated to Plaintiffs about their firings discussed who made the
11  firing decision," and "[t]hus it was not feasible to include in the complaint the names of the
12  individual defendants and they were named as Does instead."  (Dkt. 6 at 9.)  Applying Rule
13  10(f), the Court finds that the Does may remain as named defendants until Plaintiffs discover
14  their true names.  See 16 A.R.S. Rules of Civil Procedure, 10(f).

15      Accordingly,

16      **IT IS HEREBY ORDERED DENYING** Defendant Chas Roberts Air Conditioning,
17  Inc.'s Motion to Dismiss.  (Dkt. 4.)

18      DATED this 24th day of July, 2006.

Stephen M. McNamee
United States District Judge